# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**KIM DEWEESE**,  **PLAINTIFF**
*Special Administrator of the Estate of Joshua Deweese,*
*Deceased*

**v.**  **Case No. 4:20-cv-00818-LPR**

**KAREN MUNYAN**,  **DEFENDANTS**
*Special Administrator to the Estate of Monte Munyan*
*for the Claims herein in his Individual Capacity*
**LINZEE WHITAKER**,
*Official Capacity*
**JOHN DOES** *1-10,*
*Each in their Individual and Official Capacities*

## ORDER

Before the Court is Defendants Karen Munyan's and Linzee Whitaker's Partial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] The Motion requests that the Court dismiss Plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act of 1973.[2] The Motion also asks that the Court dismiss Plaintiff's 42 U.S.C. § 1983 claims to the extent they rely on violations of the ADA or Rehabilitation Act.[3] The Court will grant the Partial Motion to Dismiss for the reasons explained below.

## Factual Allegations

The Plaintiff in this case is Kim Deweese, in her capacity as the Special Administratrix of the Estate of Joshua Deweese. On March 21, 2017, Ms. Deweese's son, Joshua Deweese, was arrested and taken to the "Faulkner County Detention Center" (the "jail").[4] Ms. Deweese alleges

---

[1] Defs.' Partial Mot. to Dismiss (Doc. 4).

[2] *Id.* ¶ 5.

[3] *Id.*

[4] Pl.'s Compl. (Doc. 2) ¶ 3.

that the jail knew about Joshua's history of gastrointestinal issues.[5] In particular, she alleges that the jail was aware of a surgery that Joshua had in 2004, which involved a "partial removal of his colon, and a resection of the remainder."[6] Joshua also "suffered from a hernia and diabetes and was substantially limited in his ability to eat and drink."[7] After two weeks of incarceration, Joshua had not yet had a bowel movement.[8] And he was having problems with his hernia.[9] "During his incarceration in April of [2017], Joshua continually complained" about his medical issues.[10]

At some point during Joshua's incarceration, Ms. Deweese brought documents to the jail "for an appointment with a gastroenterologist."[11] Although the Complaint does not expressly state whether these documents related to a past appointment or a future appointment, it is reasonable to infer that these documents related to a future appointment with a private physician outside of the jail context. Mr. Monte Munyan, the jail's LPN, told Ms. Deweese that Joshua would be seen by the jail's "own [doctor]."[12] But Mr. Munyan did not contact a physician.[13] And Joshua never saw a doctor.[14] Eight days after Ms. Deweese brought the documents to the jail, Joshua vomited "a brown substance" and died.[15] His cause of death was "dehydration because he was unable to drink or eat and was vomiting."[16]

---

[5] *Id.*

[6] *Id.*

[7] *Id.* ¶ 1.

[8] *Id.* ¶ 4.

[9] *Id.*

[10] *Id.* ¶ 10.

[11] *Id.* ¶ 5.

[12] *Id.* ¶¶ 5, 12.

[13] *Id.* ¶ 11.

[14] *Id.* ¶¶ 6, 10.

[15] *Id.* ¶ 6.

[16] *Id.* ¶ 10.

The Complaint states that the Faulkner County Sherriff allowed Mr. Munyan to exercise his nursing judgment without physician supervision.[17] The Complaint states that Mr. Munyan "ignored Joshua's complaints inappropriately" and that Joshua was never given "any appropriate care under the supervision of a physician."[18] The Complaint states that Mr. Munyan exercised medical judgment outside his scope of practice, which exacerbated Joshua's health conditions and produced severe mental, emotional, and physical distress.[19] According to the Complaint, Joshua would not have died had Mr. Munyan ordered Joshua to be transported to a hospital.[20] The Complaint also alleges that the jail failed to train its personnel.[21]

## Procedural History

On April 13, 2020, Ms. Deweese filed a Complaint in the Faulkner County Circuit Court.[22] She sued Mr. Munyan both in his individual capacity and in his "official capacity as an employee of the Faulkner County Sheriff."[23] The Complaint also names ten unidentified "John Does" as Defendants.[24] They are described as "individuals, employees, contractors or agents of the Faulkner County Sheriff" that knew about Joshua's medical condition from April 15, 2017 until Joshua's death.[25] On July 9, 2020, Mr. Munyan removed the case to the Eastern District of Arkansas and

---

[17] *Id.* ¶ 7.

[18] *Id.* ¶ 8.

[19] *Id.* ¶ 9.

[20] *Id.* ¶ 10.

[21] *Id.* ¶ 16. The Complaint also states that an LPN in Arkansas lacks authority to prescribe treatment for detoxification or to order the use of restraints. *Id.* ¶ 13. The Complaint states that current and past sheriffs have allowed LPN's to violate this rule. *Id.* But the Complaint does not explain how this rule or its implementation has anything to do with Joshua's death or Ms. Deweese's case.

[22] Pl.'s Compl. (Doc. 2).

[23] *Id.* at 1.

[24] *Id.*

[25] *Id.*

filed the instant Partial Motion to Dismiss.[26]

On October 7, 2020, Mr. Munyan died.[27] On October 26, 2020, the Court held a hearing to determine the status of the case and the parties.[28] On December 4, 2020, Ms. Deweese filed a Motion to Substitute and for Revivor.[29] The parties agreed that Karen Munyan, Mr. Munyan's spouse, should be substituted for Mr. Munyan as the "Special Administrator to the Estate of Monte Munyan for the claims herein in his individual capacity."[30] The parties also agreed that Linzee Whitaker—the individual who currently holds Mr. Munyan's former position with the county—should be substituted for Mr. Munyan for the claims against him in his official capacity.[31] On December 9, 2020, the Court entered an Order granting the requested substitutions and reviving the case.[32]

Ms. Deweese's Complaint now asserts claims against Ms. Munyan (as the Special Administratrix to the Estate of Monte Munyan for the claims against him in his individual capacity), Linzee Whitaker (in her official capacity), and John Does 1-10 (each in their individual and official capacities). Although the instant Motion to Dismiss was filed while Mr. Munyan was still alive, it applies to claims asserted against him in both his individual and official capacities. The Court therefore substitutes Mr. Munyan with Ms. Munyan and Ms. Whitaker ("Defendants")

---

[26] Notice of Removal (Doc. 1); Defs.' Partial Mot. to Dismiss (Doc. 4).

[27] Suggestion of Death (Doc. 11).

[28] Oct. 26 Telephone Conference (Doc. 13).

[29] Pl.'s Mot. to Substitute Party (Doc. 14).

[30] Defs.' Resp. to Pl.'s Mot. to Substitute Party (Doc. 15).

[31] Notice to Court on Official Capacity (Doc. 16); *see also* October 26, 2020 Telephone Conference (Doc. 13) at 1-3. According to Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." FED. R. CIV. P. 25(d).

[32] Order Granting Mot. to Substitute Party (Doc. 17).

and considers the Motion to Dismiss.[33]

## Discussion

For purposes of this Motion, the Court accepts all of the factual allegations in the Complaint as true and views them (and reasonable inferences therefrom) in the light most favorable to Ms. Deweese.[34] "[A] complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[35] A claim is facially plausible if the alleged facts allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] In other words, the factual allegations must be enough to raise the right to relief "above the speculative level."[37] This requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[38]

Defendants argue that Ms. Deweese's ADA and Rehabilitation Act claims should be dismissed because "medical treatment decisions cannot form the basis of claims under the ADA or Rehab Act."[39] Defendants contend that Ms. Deweese's § 1983 claims should also be dismissed to the extent that they rely on violations of the ADA and Rehabilitation Act.[40] Defendants alternatively argue that the Court should, at the very least, dismiss the individual capacity claims

---

[33] The same attorneys that represented Mr. Munyan represent both Ms. Munyan and Ms. Whitaker.

[34] *See, e.g.*, *Stockley v. Joyce*, 963 F.3d 809, 816 (8th Cir. 2020). On the other hand, the Court need not accept as true the conclusions Ms. Deweese draws from her factual allegations. *See, e.g.*, *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts"); *see also Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 409 (8th Cir. 2012) ("A complaint that consists of no more than conclusory allegations or that merely applies labels to defendants' conduct will not survive a motion to dismiss.").

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[36] *Id.*

[37] *Twombly*, 550 U.S. at 555.

[38] *Id.*

[39] Defs.' Partial Mot. to Dismiss (Doc. 4) ¶ 3.

[40] *Id.* ¶ 5.

asserted against Ms. Munyan under the ADA and Rehabilitation Act.[41]

Ms. Deweese agrees that the Court should dismiss the individual capacity claims against Ms. Munyan. But she contends—in one sentence of her brief, without any supporting argument or caselaw—that the dismissal should be without prejudice.[42] The Court disagrees. The Eighth Circuit has plainly stated that defendants "cannot be sued in their individual capacities under the ADA or the RA" as a matter of law.[43] Accordingly, the individual capacity claims advanced under the ADA and Rehabilitation Act will be dismissed with prejudice.[44]

With respect to the official capacity claims, Ms. Deweese asserts that these claims should not be dismissed. She contends that she has pleaded sufficient facts to state official capacity claims under the ADA and Rehabilitation Act.[45]

### I. ADA and Rehabilitation Act Official Capacity Claims

"Discrimination under the ADA and the Rehabilitation Act encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability."[46] Title II of the ADA and § 504 of the Rehabilitation Act are similar in substance, and cases interpreting either are applicable and interchangeable for analytical purposes.[47] To state a claim for relief for a Title II ADA violation, "a qualified individual with a

---

[41] *Id.* ¶ 6.

[42] Pl.'s Resp. in Opp. to Defs.' Partial Mot. to Dismiss (Doc. 6) ¶ 1.

[43] *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (RA), and *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (en banc) (ADA)); *see also Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Braden v. Mountain Home Sch. Dist.*, 903 F. Supp. 2d 729, 737 (W.D. Ark. 2012); *J.S. v. E. End Sch. Dist.*, No. 405-CV-01599 GTE, 2007 WL 1029559, at *11 (E.D. Ark. Apr. 3, 2007); *Doe ex rel. Doe v. Barger*, 193 F. Supp. 2d 1112, 1116 (E.D. Ark. 2002).

[44] As explained *infra*, individual capacity claims under the ADA or Rehabilitation Act cannot be asserted under § 1983.

[45] Pl.'s Resp. in Opp. to Defs.' Partial Mot. to Dismiss (Doc. 6) ¶ 1.

[46] *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014).

[47] *See, e.g.*, *Durand v. Fairview Health Servs.*, 902 F.3d 836, 841 (8th Cir. 2018) ("Although there are differences

disability must be excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or be otherwise discriminated against by the entity, by reason of the individual's disability."[48]  To state a claim for relief for a § 504 violation under the Rehabilitation Act, "a qualified individual with a disability must be denied, on the basis of the individual's disability, the benefits of a program or activity of a public entity receiving federal funds."[49]  The question in this case is whether Joshua Deweese was denied the benefit of a public entity's "services, or programs, or activities" when he allegedly was denied competent and effective medical care.

In *Pennsylvania Dep't of Corr. v. Yeskey*, the Supreme Court explained that "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')."[50]  The take away for purposes of this case is that medical services (medical care) is one of the "services, programs, or activities" covered under the ADA and Rehabilitation Act.  But courts have differentiated between claims based on negligent medical care and those based on discriminatory conduct (including failure to provide reasonable accommodations).  Simply put, purely medical decisions do not fall within the scope of the ADA or Rehabilitation Act.  Neither the ADA nor the Rehabilitation Act provide a federal remedy for medical malpractice.

---

between the ADA and the RA, including the RA's aforementioned federal funding requirement, the case law interpreting the two statutes is generally used interchangeably.").

[48] *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 983 (8th Cir. 2013) (citing *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir.1998)).

[49] *Id.* (citing *M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 981–82 (8th Cir.2003)).  Notably, the Complaint asserts that the Faulkner County Sheriff's Office began receiving federal funding in 2018, which was well after Joshua died.  Pl.'s Compl. (Doc. 2) at 1.

[50] 524 U.S. 206, 210 (1998).

7

The Eighth Circuit has repeatedly held that claims under the ADA or Rehabilitation Act cannot be based on "medical treatment decisions."[51] For example, in *A.H. v. St. Louis Cty., Mo.*, the Eighth Circuit affirmed the district court's dismissal of "[i]mproper medical treatment claims" under the ADA and Rehabilitation Act.[52] On appeal, the plaintiffs in *A.H.* argued that the complaint should not have been dismissed because the complaint alleged discrimination "based on social, educational, recreational, religious and safety accommodations, not medical treatment decisions."[53] The Eighth Circuit disagreed. It noted that the complaint alleged that the decedent "could have enjoyed various benefits of jail life but for 'a lack of treatment and adequate supervision'" and that the decedent was "not given appropriate medication, protection from hazards, and security monitoring that would have prevented him from committing suicide."[54] The Eighth Circuit explained that "[t]hese allegations are, in essence, claims of inadequate medical treatment indistinguishable from the claims [the Eighth Circuit] held could not be brought under the ADA or RA . . . ."[55]

In *Dinkins v. Correctional Medical Services*, the Eighth Circuit affirmed the district court's

---

[51] *A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 729 (8th Cir. 2018) ("Improper medical treatment claims may not be brought under the ADA or RA."); *Moss v. Corizon CMS*, 622 F. App'x 591 (8th Cir. 2015) (unpublished) (finding that the "evidence in the record established beyond genuine dispute that defendants did not deliberately disregard [the plaintiff's] serious medical needs" and that medical treatment decisions are not a proper basis for ADA claims); *Dinkins*, 743 F.3d at 634 (affirming the dismissal of "the claims against the medical doctors and [Correctional Medical Services], as those claims were based on medical treatment decisions—including not properly diagnosing and treating [the plaintiff's] pernicious anemia—which cannot form the basis of a claim under the RA or the ADA"); *Shelton v. Ark. Dep't of Human Servs.*, 677 F.3d 837, 843 (8th Cir. 2012) (reasoning that an improper medical treatment decision cannot form the basis of an action under the ADA or Rehabilitation Act when the decision was only influenced by the physician's medical judgment); *McElroy v. Patient Selection Comm. of Neb. Med. Ctr.*, No. 07-3877, 2009 WL 50176, at *1 (8th Cir. Jan. 9, 2009) (unpublished) (reasoning that discretionary medical treatment decisions cannot be the basis for an ADA Title III claim); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (agreeing with the Eleventh and Tenth Circuits in concluding that "a lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions").

[52] 891 F.3d at 729.

[53] *Id.* at 730.

[54] *Id.*

[55] *Id.*

8

dismissal of the plaintiff's "claims against the medical doctors and [Correctional Medical Services], as those claims were based on medical treatment decisions—including not properly diagnosing and treating [the plaintiff's] pernicious anemia—which cannot form the basis of a claim under the RA or the ADA."[56]  In *Shelton v. Ark. Dept. of Human Services*, the Eighth Circuit affirmed the district court's determination that a "claim based upon [an] improper medical treatment decision cannot be brought pursuant to either the ADA or the Rehabilitation Act."[57]  In reaching this decision, the Eighth Circuit noted that there were no allegations that the doctor's decision to remove the patient from suicide watch "was influenced by anything other than a physician's judgment," which "is properly characterized as a medical-treatment decision" and not actionable under the ADA or Rehabilitation Act.[58]

Similar to the facts in *A.H.*, the true nature of Ms. Deweese's claim is somewhat disguised. Ms. Deweese asserts in a conclusory fashion that Defendants failed to "self-evaluate" and consequently (1) failed to conduct and complete appropriate assessments, (2) failed to create and

---

[56] 743 F.3d at 634.

[57] 677 F.3d at 843.

[58] *Id.*  Our Circuit is far from the only one to recognize this distinction.  *See, e.g.*, *Sullivan v. Univ. of Kansas Hosp. Auth.*, No. 19-3213, 2021 WL 303142, at *3 (10th Cir. Jan. 29, 2021) (approving of the district court's observation that "purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act"); *Wenzke v. Munoz*, 800 F. App'x 76, 79 (3d Cir. 2020) (unreported) (affirming dismissal of the plaintiff's ADA claims because a lawsuit under the ADA cannot be based on medical treatment decisions); *Grant v. Alperovich*, 703 F. App'x 556, 557 (9th Cir. 2017) (unreported) (affirming the district court's grant of summary judgment because the "assertion of discrimination in medical treatment decisions amounted to a claim of medical malpractice, rather than a claim of discrimination governed by the ADA"); *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231–32 (2d Cir. 2014) ("[A] doctor may refuse to prescribe a particular treatment, which the disabled patient has requested, because of the doctor's assessment (based on an appraisal of the patient's medical condition) that the treatment would be harmful. The doctor's refusal is not discrimination in violation of the statute, even if the doctor's medical analysis is flawed. Such a decision may be malpractice, but it is not discrimination."); *Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) (recognizing a "distinction between ADA claims based on negligent medical care and those based on discriminatory medical care" and explaining that there are only "two situations in which a challenge based on a treatment decision might be made: (1) the treatment decision was so unreasonable as to be arbitrary and capricious, raising an implication of pretext for some discriminatory motive, and (2) if not pretextual, the treatment decision was based on stereotypes of the disabled rather than an individualized inquiry as to the plaintiff's conditions").

implement appropriate health treatment plans, (3) failed to follow clinical judgments and recommendations, (4) failed to properly evaluate and transfer "gravely disabled" inmates, (5) failed to implement appropriate emergency treatment policies, and (6) failed to provide appropriate staffing and training for treating the seriously ill.[59]  But there is no question what the core allegations underpinning Ms. Deweese's ADA and Rehabilitation Act claims are—namely, that Mr. Munyan "exercised nursing judgment without a physician's supervision," that Joshua was not "given any appropriate care under the supervision of a physician," and that had Mr. Munyan "simply ordered Joshua to be transported to a hospital, Joshua would not have died."[60]  In other words, Ms. Deweese alleges that, but for Mr. Munyan's poor judgment, Joshua would still be alive. As was the case in *A.H.*, "[t]hese allegations are, in essence, claims of inadequate medical treatment indistinguishable from the claims [the Eighth Circuit] held could not be brought under the ADA or RA . . . ."[61]

Claims relating to improper medical care or services are only cognizable under the ADA or Rehabilitation Act if the Complaint alleges facts showing that the treatment decision was the product of discrimination (which includes both disparate treatment and failure to accommodate theories).  Ms. Deweese does not allege any explicit facts demonstrating that Mr. Munyan's treatment decisions were influenced by improper bias or prejudice against Joshua because of Joshua's disability.  Nor does the Complaint allege any facts that would permit the Court to reasonably infer that Mr. Munyan withheld available treatment from Joshua based on discrimination.  At the most, the alleged wrongdoing amounts to poor professional judgment and

---

[59] Pl.'s Compl. (Doc. 2) ¶ 33.

[60] *Id.* ¶¶ 7, 8, 10.  Ms. Deweese's Response in Opposition to Defendants' Partial Motion to Dismiss asserts that these allegations "adequately allege a program to which Plaintiff has been denied." Pl.'s Resp. in Opp. to Defs.' Partial Mot. to Dismiss (Doc. 6) ¶ 5.

[61] *A.H.*, 891 F.3d at 730.

poor "medical treatment decisions," which the Eighth Circuit does not recognize as actionable under the ADA or Rehabilitation Act, even when packaged as discrimination or failure to accommodate claims.

## II. Section 1983 Claims

Section 1983 "creates no substantive rights[,] . . . it is merely a vehicle for seeking a federal remedy for violations of federally protected rights."[62]  Defendants argue that the Court should dismiss Ms. Deweese's § 1983 claims to the extent that they rest on alleged violations of the ADA or Rehabilitation Act.  The Court agrees.  As explained above, Ms. Deweese failed to state a claim under the ADA or Rehabilitation Act.  Thus, any § 1983 claims predicated on violations of the ADA or Rehabilitation Act likewise fail to state a claim.  Moreover, even if Ms. Deweese had stated viable claims under the ADA and Rehabilitation Act, dismissal would still be proper for the corresponding § 1983 claims.  The Eighth Circuit recognizes that "the comprehensive enforcement mechanisms provided under § 504 of the RA and the ADA suggest Congress did not intend violations of those statutes to be also cognizable under § 1983."[63]  To the extent Ms. Deweese predicated her § 1983 claims on violations of the ADA and Rehabilitation Act, those claims fail to state a claim for relief.

## Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Partial Motion to Dismiss. (Doc. 4).  IT IS THEREFORE ORDERED that:

---

[62] *Alsbrook*, 184 F.3d at 1012.

[63] *Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 936 (8th Cir. 2016) (quoting *Davis v. Francis Howell Sch. Dist.*, 104 F.3d 204, 206 (8th Cir. 1997)).

1)  The official capacity ADA and Rehabilitation Act claims are dismissed WITHOUT PREJUDICE.[64]

2)  The individual capacity ADA and Rehabilitation Act claims are dismissed WITH PREJUDICE.

3)  To the extent that Ms. Deweese bases any § 1983 claims on purported violations of the ADA or Rehabilitation Act, those claims (whether official or individual capacity claims) are dismissed WITH PREJUDICE.

All other claims continue to move forward.

IT IS SO ORDERED this 24th day of February 2021.

LEE P. RUDOFSKY
UNITED STATES DISTRICT COURT

---

[64] Perhaps Ms. Deweese could add factual allegations that state an ADA or Rehabilitation Act claim. The Court does not know whether she can or not. The Court will not foreclose the possibility. That is why the dismissal is without prejudice.